Andrew Rozynski (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
E-mail: arozynski@EandBLaw.com

William A. Richards #013381
Shayna G. Stuart #034819
**RICHARDS & MOSKOWITZ PLC**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone No. 602-595-7800
Facsimile No. 602-812-7995
E-mail:  brichards@RMazlaw.com
          sstuart@RMazlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| Dianne L. Needham, | Case No. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT** |
| Panera, LLC, | |
| Defendant. | |

Plaintiff Dianne Needham, by and through her undersigned counsel, Eisenberg & Baum, LLP and Richards & Moskowitz, PLC, hereby states her Complaint against Defendant Panera, LLC as follows based upon personal knowledge and information and belief:

## INTRODUCTION

1. Dianne L. Needham ("Plaintiff") is a late-deafened person, meaning that she lost her hearing as an adult. Plaintiff was treated rudely and differently than hearing persons by

1

Panera, LLC ("Defendant") employees because of her disability when she attempted to order food from a Panera drive-thru location at 14826 N. Pima Road, Scottsdale, Arizona 85260.

2. Through this discriminatory treatment, Plaintiff learned not only that Defendant's restaurants and drive-thru windows are inaccessible to deaf individuals, but that Defendant's employees and managers are inadequately trained and improperly informed about the communication rights and needs of deaf people.

3. Plaintiff brings this lawsuit to compel Defendant to cease its unlawful discriminatory practices and implement policies and procedures that will ensure that effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's restaurant services.

4. Plaintiff seeks injunctive and declaratory relief, nominal and compensatory damages, and attorneys' fees and costs to redress Defendant's unlawful discrimination against her on the basis of her disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq; and the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, et seq.

## THE PARTIES

5. Plaintiff is a resident of Maricopa County, Arizona, who is substantially limited in the major life activity of hearing.  Thus, she is a qualified individual with a "disability" within the meaning of federal and state civil rights laws.

6. Upon information and belief, Defendant Panera Bread Company is a foreign for-profit corporation with a registered address for service at 221 Bolivar Street, Jefferson City, Missouri, 65101, and a principal office address at 3630 South Geyer Road Suite 100, St. Louis, Missouri 63127. Upon information and belief, Defendant is a chain store of fast casual restaurants with over 2,000 locations, including in Scottsdale, Arizona. Panera is a place of public accommodation within the meaning of federal and state civil rights laws.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law, and supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state law.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

**STATEMENT OF FACTS**

9. Plaintiff is a deaf individual who lost her hearing as an adult.

10. Upon information and belief, Defendant owns, operates and/or leases a Panera restaurant located at 14826 N. Pima Road, Scottsdale, Arizona 85260.

11. On multiple occasions between November 2020 and January 2021, Plaintiff attempted to utilize the drive-thru of this Panera restaurant location.

12. Defendant's drive-thru service is provided via specialized automobile driveway lanes which stretch around Defendant's restaurants. In order to obtain drive-thru service, customers maneuver their vehicles into the drive-thru lane and relay their food order to Panera employees via microphone. Customers then drive their car further along the lane and retrieve their food from windows on the side of Defendant's restaurant.

13. Because Defendant's drive-thru ordering system requires a customer to utilize hearing and speaking through a microphone, Plaintiff had significant difficulties in placing her food orders, and would often receive incorrect or missing food items.

14. As such, on the occasions at issue, Plaintiff instead drove to the drive-thru window and attempted to place her order from an employee at the window.

15. On these occasions, Plaintiff informed Defendant's employee that Plaintiff was deaf and could not hear, and told the employee her order.

16. Rather than accommodate Plaintiff's disability and allow her to wait for her order at the drive-thru window, Defendant's employees would ask Plaintiff to leave the drive-thru lane and wait for her order elsewhere in the parking lot.

17. On one occasion, Plaintiff attempted to have her incorrect food order corrected by pulling up to the drive-thru window and asking Defendant's employee to speak slowly to

3

her and confirm her order. The employee told Plaintiff that they cannot allow her to do, and told her to pull up and go inside the store for service.

18. Not only was Plaintiff hesitant to enter Defendant's location at the height of the ongoing COVID-19 pandemic, but there was no indication Defendant would accommodate her disability inside the store when they refused to do so at the drive-thru window.

19. On another occasion, Plaintiff asked for one of Defendant's managers to ensure that her order was being taken correctly. The manager, "Cassandra," appeared frustrated and impatient, and again told Plaintiff to either go inside the store or wait for her order in the parking lot.

20. When Plaintiff voiced her frustration with her lack of access to the drive-thru, and the resulting frequency of incorrect orders, the manager offered Plaintiff coupons which came with a handwritten note stating: "use at any *other* location" (emphasis added).

21. Because of Plaintiff's inability to meaningfully access Defendant's drive-thru services, and the rude treatment by Defendant's employees and managers, Plaintiff expressed her disappointment with Defendant's senior management via email dated January 7, 2021.

22. Plaintiff outlined in this email that "there is no mechanism for a hearing-impaired individual to facilitate such clear communications; no push button at the speaker box for improved clarity; no signage stating if you are deaf or hearing impaired to pull up to order directly from the window; not even a call button to indicate you are deaf or hard of hearing."

23. Plaintiff's email also described her own experiences at Defendant's drive-thru: "I cannot hear the associate from the call box; at best, I lean way out of my car window to have them repeat and repeat what they are saying. When I have asked to come to the window I am told they cannot have me do that because of the 'other customers who would have to wait longer' or 'I can pull up and go inside.'" Plaintiff also requested information as to how Defendant planned to resolve this lack of access for deaf and hard of hearing individuals at its drive-thru locations. Plaintiff wrote a similar email to Defendant's social media team.

24. On January 8, at 2:59 pm, Defendant's "Social Media Customer Care Coordinator", Claire Watson, responded to Plaintiff, stating "I want to start by apologizing for

4

your experience in the drive-thru because I know our team did not meet the expectation of putting our guests first. [. . .] We're working directly with the leadership team that oversees this café to address this training opportunity with our associates. [. . .] We want to ensure that you, along with any other hearing-impaired guests, are able to order in the drive-thru and have the same great experience you expect when dining in. We greatly appreciate the chance to learn how to better serve our guests. Thank you for bringing this to our attention – please don't hesitate to [reach] back out to me here."

25. Plaintiff responded to Ms. Watson at 4:46 pm, stating that "I would like to know why Panera Bread does not have the access features for hearing-impaired individuals available at their drive-through call boxes that similar businesses do. The technology has long been available in the marketplace. What is the Panera Bread corporate policy for providing access to their drive-throughs for hearing-impaired individuals, or does Panera Bread not have a policy addressing access for individuals with disabilities?" Plaintiff repeated that "hearing-impaired people cannot communicate with the drive-through equipment as it exists at that location," and requested "that an executive or high-level manager will provide direct answers to my questions and concerns, and how and when this will be corrected."

26. Later that day, Defendant's senior Regional Vice President, Jeff Harman, replied to Plaintiff's 4:46 pm email, assuring her that "I'm personally looking into the issue you experienced below" as he is "responsible for the western half of the country," and asking for a time to discuss Plaintiff's issues. Mr. Harman's email copied Tina Smith and Mike Adams, noting that they "are responsible at a regional and local level for the Scottsdale Panera cafés."

27. Over the next few days, Plaintiff and Mr. Harman exchanged emails discussing times to meet and discuss Defendant's accessibility issues.

28. On or around January 15, 2021, Plaintiff received a gift basket and an apology from Mike Adams for Defendant's treatment of Plaintiff. Accordingly, Plaintiff emailed Mr. Harman to thank them and to follow-up on a time to discuss her issues with Mr. Harman. Mr. Harman responded that he would send over some times and dates that would work for him.

29. These scheduling emails continued back-and-forth until January 29, 2021, when

Mr. Harman emailed Plaintiff stating "Hi Dianne – We (finally) have some actionable follow-up and potentially a process to put into place. Could you and I find time next Tuesday or Wednesday to connect?"

30. Eventually, Plaintiff and Mr. Harman were able to schedule a phone meeting for February 3, 2021 to discuss Defendant's purported plan to implement policies and procedures regarding the accommodation of deaf and hard of hearing customers.

31. Immediately following this phone call, Mr. Harman sent a series of draft updated policies and procedures regarding Defendant's treatment of deaf and hard of hearing customers to Plaintiff for her review and input. These documents included a slideshow titled "Panera Bread – Accommodating Drive-Thru Guests with Hearing Impairments," which provided draft policies and procedures for accommodating deaf and hard of hearing individuals at Defendant's drive-thrus, and provided a timeline for implementation of those policies and procedures by the end of February 2021. Mr. Harman also included a Microsoft Word document with Defendant's logo at the top titled "Updated Guest Service in the Drive-Thru," which specifically stated that its purpose was "[e]levating our Drive Thru experience for deaf and hard of hearing guests to ensure we're accommodating their needs and decreasing potential friction when ordering in our Drive-Thru." This document outlined additional potential procedures for accommodating customers who are deaf and hard of hearing.

32. On February 4, 2021, Plaintiff emailed Mr. Harman with her comments and thoughts on Defendant's proposed policy. That same day, Mr. Harman responded "Dianne, the feedback is valuable and I appreciate it, like I mentioned still in its initial stages. Would like to connect next week for a calibration."

33. Despite Mr. Harman's email, and multiple follow-up emails from Plaintiff, Plaintiff did not hear from Mr. Harman for the remainder of February 2021.

34. Accordingly, on March 1, 2021, Plaintiff wrote to Mike Adams, thanking him for the gift basket and stating that "I am wondering how things are going/any further progress with addressing the access issue for deaf/hearing impaired folks who use the Panera Bread café drive-through service." Plaintiff also noted that Mr. Harman "had sent me an email (Feb. 4th)

about continuing our discussion with another call but I haven't heard from him since then. I reached out to him twice via email but never heard back. I know he is busy but he is usually very responsible and hope all is okay. Would you let him know I am trying to reach him?" Plaintiff also explained that "[i]n the near future I hope to return as a customer to a Panera cafe drive-through. My return is dependent upon receiving equal access at the drive-through. As I told Jeff it is embarrassing and diminishing to not feel welcome, which I never expected. I experienced Sudden Hearing Loss (in less than a week, no known cause) after living my entire life with normal hearing so challenges like using a drive-through restaurant service window can be unpleasant."

35. Mr. Harman finally reached out to Plaintiff on March 4, again asking to schedule a time to "touch base" and apologizing for the delay. Plaintiff and Mr. Harman exchanged emails back and forth over the next week, each time with Mr. Harman giving an excuse for not being able to talk with Plaintiff.

36. Plaintiff and Mr. Harman were finally scheduled to speak on March 11, 2021. On March 11, at 7:26 am, Mr. Harman wrote "I'm so sorry for the back and forth. The airport is a madhouse and I'm trying to find a quiet place. Would you be flexible enough to try this again later this afternoon or even tomorrow?" At 8:28 am, Plaintiff replied, "No worries. I can't do rest of today and tomorrow. Let's go with a time next week."

37. That same day, at 9:34 am, Mr. Harman responded to Plaintiff, "I'm appreciating you right now. A lot. I actually have some items to share and this allows some time to get it over." At 9:53 am, Plaintiff replied "Ok. Will look for it."

38. At 9:07 am, Mr. Harman emailed Plaintiff again, stating "I didn't forget about you. I'm being dropped off at the airport and just need to get to my gate."

39. Plaintiff never heard from Mr. Harman or anyone else from Panera again.

40. Based on the above-described incidents, Defendant's drive-thru ordering system, which requires a customer to utilize hearing and speaking, is inaccessible to deaf individuals. Defendant offers no accessible or alternative means for deaf individuals, including Plaintiff, to utilize the drive-thru in a manner equal to the service offered to hearing individuals.

7

41. Indeed, Plaintiff again visited Defendant's restaurant at issue in May 2021, and found that Defendant had undertaken no visible efforts to implement the draft policies and procedures that Mr. Harman had presented to Plaintiff, or to otherwise make its drive-thru windows accessible to deaf or hard of hearing customers.

42. Defendant's conduct caused Plaintiff to be denied the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, and/or accommodations.

43. Defendant's discriminatory conduct caused Plaintiff to suffer emotional distress, including humiliation, anger, frustration, stress, and anxiety.

44. In addition to suffering emotional distress from Defendant's failure to accommodate her disability, Plaintiff also felt betrayed by Defendant's efforts to placate Plaintiff, and to lead Plaintiff to believe that Defendant would adopt policies, procedures, and training opportunities regarding the treatment of customers who are deaf and hard of hearing.

45. Plaintiff is entitled to equal access to services offered by Defendant as are enjoyed by non-disabled persons.

46. Defendant's Scottsdale location is in close vicinity to Plaintiff's home. Plaintiff still wishes to attend this Panera location, but it deterred from doing so by Defendant's discriminatory acts and omissions.

## CAUSES OF ACTION

**I.   COUNT I: Violations of Title III of the Americans with Disabilities Act.**

47. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

48. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq., has been in full force and effect and has applied to Defendant's conduct.

49. At all times relevant to this action, the United States Department of Justice's regulations implementing Title III of the ADA, 28 C.F.R. Part 46, have been in full force and effect and have applied to Defendant's conduct.

50. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activity of hearing and has been an individual with a disability within the meaning

of the ACA, 42 U.S.C. § 18116.

51. Defendant owns, leases, and/or operates a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

52. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leased (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

53. Title III of the ADA also provides that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

54. Title III of the ADA further defines discrimination to include "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable," or "where an entity can demonstrate that the removal of a barrier . . . is not readily achievable a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv-v).

55. Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

56. As set forth above, Defendant discriminated against Plaintiff on the basis of her disability in violation of Title III of the ADA and its implementing regulations.

57. Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA.

58. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys'

fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

**II.    COUNT II: Violations of the Arizonans with Disabilities Act.**

59. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

60. At all times relevant to this action, the AzDA, A.R.S. § 41-1492 et seq., has been in full force and effect and has applied to Defendant's conduct.

61. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activity of hearing, and is therefore a qualified individual with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

62. At all times relevant to this action, Defendant's restaurants have been places of public accommodation within the meaning of the AzDA, A.R.S. § 41-1492(11)(b).

63. The AzDA states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation. A.R.S. § 41-1492.02(A).

64. Discrimination under the AzDA includes "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2).

65. Discrimination under the AzDA also includes "[a] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services, unless the entity can demonstrate that taking these steps would fundamentally alter the nature of the goods, service, facility, privilege, advantage or accommodation being offered or would

result in an undue burden." A.R.S. § 41-1492.02(G)(3).

66. As set forth above, Defendant discriminated against Plaintiff on the basis of her disability in violation of the AzDA.

67. Defendant has also failed to implement policies, procedures, and training of staff necessary to ensure compliance with the AzDA.

68. The AzDA provides that "[a]n aggrieved person may file a civil action in superior court not later than two years after the occurrence or the termination of an alleged discriminatory public accommodation practice or the breach of a conciliation agreement entered into under this article, whichever occurs last, to obtain appropriate relief with respect to the discriminatory public accommodation practice or breach." A.R.S. § 41-1492.08(C).

69. Plaintiff is therefore entitled to declaratory and injunctive relief, compensatory damages, and attorney's fees, costs, and disbursements pursuant to A.R.S. §§ 41-1492.08 and 41-1492.09.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Dianne Needham respectfully requests that this Court:

A. Enter a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act and the Arizonans with Disabilities Act;

B. Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals or their companions meaningful access to, and full and equal enjoyment of, Defendant's facilities, services, or programs;

C. Issue an injunction ordering Defendant to:

    i. develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing customers and accommodate those customers at Defendant's drive-thrus;

    ii. develop, implement, promulgate, and comply with a policy to ensure that

      Defendant will accommodate and consider the communication needs of deaf and hard of hearing individuals who seek Defendant's goods and/or services and will affirmatively work with such individuals to provide effective auxiliary aids and services to make its services available;

  iii. train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and AzDA and ensure compliance with the modified policies and procedures ensuring access to such individuals;

D. Award to Plaintiff:

  i. Compensatory damages pursuant to the AzDA;
  ii. Nominal damages;
  iii. Reasonable costs and attorneys' fees pursuant to the ADA and AzDA;
  iv. Interest on all amounts at the highest rates and earliest dates allowed by law; and
  v. Any and all other relief that this Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 21st day of September, 2021.

      RICHARDS & MOSKOWITZ PLC

      /s/ William A. Richards
      William A. Richards
      Shayna G. Stuart
      1850 N. Central Avenue, Suite 2010
      Phoenix, AZ  85004

      AND

      EISENBERG & BAUM, LLP
      Andrew Rozynski, Esq.
      24 Union Square East, Penthouse
      New York, NY 10003
      *Attorneys for Plaintiff*

RICHARDS & MOSKOWITZ PLC
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995